**UNITED STATES of America, Plaintiff,**

v.

**Renato R. PASQUALINO, Defendant.**

**No. CR–85–076–GF.**

United States District Court,
D. Montana,
Great Falls Division.

Feb. 20, 1986.

184

Byron H. Dunbar, U.S. Atty., Billings, Mont., Carl H. Rostad, Asst. U.S. Atty., Dist. of Mont., Great Falls, Mont., for plaintiff.

Michael W. Cotter, Great Falls, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, District Judge.

The defendant, Renato Pasqualino, having been indicted for numerous violations of the Gun Control Act of 1968 (26 U.S.C. § 5861), moves the court to suppress from the introduction into evidence the prohibited firearm, *i.e.*, .380 caliber "machine" gun, upon which the charges are predicated. Pasqualino asserts the gun is the fruit of an illegal detention and search. Having considered the evidence presented with respect to Pasqualino's motion, the court concludes that the initial detention and subsequent search leading to the discovery of the firearm comported with the proscriptions of the Fourth Amendment.

FACTUAL BACKGROUND

On October 23, 1985, a threat was anonymously communicated by telephone to an official of Amtrak, in Chicago. The caller informed the official that an explosive device had been placed upon one of Amtrak's trains, *i.e.*, The "Empire Builder". Amtrak promptly notified the appropriate law enforcement agencies, including the Toole County Sheriff's Department in Shelby, Montana; the next station site at which the train was scheduled to arrive only minutes

after the threat was received. Personnel of the Sheriff's Department were immediately dispatched to the station. In an effort to facilitate detection of the purported explosive device, Amtrak promptly secured the use of a "sniffer dog" belonging to the United States Air Force. The dog was to be available for use at the Shelby station approximately one hour and forty-five minutes after a request was officially made.

Upon its arrival at the depot, the train was evacuated and immediately moved to a remote location where a search was conducted with negative results. In the meantime, all passengers, including Pasqualino, were requested to deposit at the loading platform any luggage, bags, etc., they had in their possession, in order that an inspection of the luggage could be conducted prior to reboarding. Immediately prior to the inspection, Sheriff's deputies observed Pasqualino nervously attempting to exit the depot with a "military" type duffel bag. One of the deputies directed Pasqualino to return to the platform where the inspection proceeded. A short time later, when it came time for the inspection of Pasqualino's belongings, one of the deputies asked Pasqualino if he would allow the deputy to inspect the duffel bag, whereupon the following colloquy occurred:

Pasqualino: Before you do, I want to know what my legal rights are.

Deputy: Do you have some kind of contraband in the bag?

Pasqualino: I want to know what you are going to do before I let you go through my bag and what if I refused to let you.

Deputy: In view of what is going on, we are going to have to go through the bag for the safety of the passengers and if you refuse we will have to get a search warrant.

Pasqualino: Am I going to get busted for what's in there?

Deputy: If it turns out to be a small amount of marijuana or pills it will probably just be seized and no charges filed.

Pasqualino: Well, it's not marijuana.

Deputy: What is it?

Pasqualino: I have an Ingram MAC 10 in a case.

Deputy: Is it full auto?

Pasqualino: It's been converted.

At the conclusion of the conversation, the deputy removed a locked container from the duffel bag. Having obtained a key from Pasqualino, the deputy opened the container to find, among other things, the firearm at issue.

## DISCUSSION

Pasqualino contends that both his initial detention and the subsequent search of his duffel bag were accomplished without probable cause in violation of the Fourth Amendment. Resolution of the issue presented requires the court to undertake a two-step analysis: First, the court must determine whether the initial detention of Pasqualino infringed upon his Fourth Amendment rights. If the detention was improper, the firearm at issue must be suppressed as the product of an illegal seizure. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). If, on the other hand, the court concludes that the search of Pasqualino's duffel bag was not preceded by an impermissible stop, it must, nonetheless, proceed to determine whether the warrantless search of the duffel bag was justified under the circumstances.

## INITIAL DETENTION

 A person may not be detained by law enforcement officials, even momentarily, unless there exists reasonable, objective grounds to support the detention. *United States v. Mendenhall*, 446 U.S. 544, 556, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). Not all detentions amounting to the seizure of a person, however, must be justified by probable cause to arrest for a crime. *See, Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Temporary detention for questioning on less than probable cause satisfies the ultimate test of reasonableness under the

Fourth Amendment where the public interest in the suppression of any serious crime is involved. *Florida v. Royer*, 460 U.S. at 498–99, 103 S.Ct. at 1324–25. As noted by the Court in *Royer*, however, the exceptions to the probable cause requirement are limited, and law enforcement personnel may not carry out a full search of a person or his effects in the name of investigating a person who is no more than suspected of criminal activity. *Id.*, at 499, 103 S.Ct. at 1325. While the scope of a detention on less than probable cause will vary to some extent with the particular facts and circumstances of each case, the detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Id.*, at 500, 103 S.Ct. at 1325–26.

There is no question but that Pasqualino was subjected to a seizure, within the meaning of the Fourth Amendment, on less than probable cause. The record further evinces that the initial detention was of limited duration, lasting no longer than necessary to effectuate the purpose of the stop. Consequently, the validity of Pasqualino's initial detention hinges on whether there existed reasonable, articulable suspicion to justify a temporary detention. The court finds that the *Terry-* stop rationale, as expanded and refined in the *Terry* progeny, *see e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 881–86, 95 S.Ct. 2574, 2580–82, 45 L.Ed.2d 607 (1975) (reasonable suspicion of criminal activity warranted temporary seizure), justified the restraint to which Pasqualino was subjected in the first instance.

■ Given the circumstances in which the officers were operating, and the inherently exigent nature of a bomb threat investigation, Pasqualino's conduct in attempting to exit the station with a "military" type duffel bag, coupled with his nervous appearance, provided adequately reasonable grounds for the officers to suspect that he was involved in the purported criminal activity under investigation. Consequently, the officers were justified in temporarily detaining Pasqualino to "verify or dispel their suspicions in a manner that did not exceed the limits of any investigative detention." *Florida v. Royer*, 460 U.S. at 502, 103 S.Ct. at 1326.

■ Review of the record convinces the court that the officers did not exceed the bounds of a permissible *Terry-* type detention. The scope of the detention was "carefully tailored to its underlying justification," *Florida v. Royer*, 460 U.S. at 500, 103 S.Ct. at 1325. Pasqualino was initially detained for a legitimate purpose; there existing absolutely no indication that the detention was a subterfuge. The manner and length of the detention satisfied the ultimate test of reasonableness under the Fourth Amendment.[1]

## THE SEARCH

■ The validity of Pasqualino's initial detention established, there remains the separate issue of whether the search of his duffel bag satisfied the proscriptions of the Fourth Amendment. Pasqualino's statements aside, the record indisputably establishes that the "probable cause" necessary to justify a warrantless search of Pasqualino's duffel bag was lacking. Consequently, the validity of the search conducted hinges on whether Pasqualino's purported "consent", in the form of an admission of criminal activity, was valid.[2]

---

1. In light of the rationale espoused in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), one may be tempted to speculate whether the period of time necessary to subject Pasqualino's duffel bag to a "sniff test" would have been unreasonable *per se.* Had Pasqualino simply refused to allow a search, the rationale of *Place* may have become pertinent. The events which actually transpired, however, obviate the need for such speculation.

2. It is irrelevant whether the statement made by Pasqualino regarding his possession of the illegal firearm is characterized as a "consent" to search or an admission of criminal activity since, as a practical matter, the two are equivalent under the circumstances. The determinative inquiry is whether the statement was voluntarily made. *See, United States v. Agosto*, 502 F.2d 612 (9th Cir.1974); *cf., United States v. Ocheltree*, 622 F.2d 992 (9th Cir.1980).

The journals are replete with cases evidencing the consternation courts have faced in determining the validity of a consent to search, obtained after law enforcement personnel have "threatened" to seek or obtain a warrant if consent is withheld. The determinative issue is voluntariness. The voluntariness of any purported consent, given in response to such a threat, presents a factual question to be determined under the totality of the circumstances. *See, United States v. Agosto, supra,* at 614 (9th Cir.1974), citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *cf., United States v. Ocheltree, supra,* at 992 (9th Cir. 1980). The language utilized by the officer in communicating his intent to procure a search warrant if consent is withheld is not dispositive. *See, United States v. Ocheltree, supra.* Evaluation of the circumstances in the case *sub judice* convinces the court that the statements of Pasqualino were voluntary.

 The detention of Pasqualino, and the subsequent inquiry regarding consent, occurred in a public place within the plain view of numerous witnesses. At no point in time did the inquiry escalate into an investigatory procedure in an interrogation room, where the innate, intimidating power of law enforcement was brought to bear upon the suspect. *See, Florida v. Royer,* 460 U.S. at 503, 103 S.Ct. at 1327. The coercive atmosphere which compelled the decision in *Ocheltree* is absent in the case at bar. The officer's statement regarding the procurement of a search warrant was a spontaneous response invited by Pasqualino, rather than a threat of unreasonable detention communicated simultaneously with an otherwise permissible request to search.

A final point bears comment. The rationale upon which *Ocheltree* is predicated must be assessed in light of the recent decisions rendered by the Supreme Court in *Royer* and *Place.* Application of *Royer* to the present facts establishes that the temporary detention of both Pasqualino and his duffel bag was valid. *Place,* in turn, holds that a "canine sniff" is not a search within the meaning of the Fourth Amendment. Consequently, Pasqualino's "duffel" bag could have legitimately been subjected to a "canine sniff" for the purpose of detecting the presence of explosives. The record establishes that this means of investigating the contents of Pasqualino's bag was not only feasible, but was imminent. Unlike the situation in *Ocheltree,* the possibility of obtaining a search warrant was real, and not a mere threat beyond the officer's capabilities under the circumstances. Obviously, recognition of the validity of subjecting luggage, etc., to "canine sniffs", precludes application of the *Ocheltree* rule on a *per se* basis as urged by Pasqualino.

For the reasons set forth herein, IT IS HEREBY ORDERED that the defendant's motion to suppress be, and the same hereby is, DENIED.